284 So.2d 673 (1973)
Fred AARON, Petitioner,
v.
STATE of Florida, Respondent.
No. 42439.
Supreme Court of Florida.
July 11, 1973.
Rehearing Denied November 30, 1973.
*674 Henry R. Barksdale of Barksdale, Mayo & Murphy, Pensacola, for petitioner.
Robert L. Shevin, Atty. Gen., and Richard W. Prospect, Asst. Atty. Gen., for respondent.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, First District, reported at 261 So.2d 515, which affirmed the judgment of the Circuit Court of the First Judicial Circuit in and for Escambia County. Our jurisdiction is based on conflict between the decision sought to be reviewed and State ex rel. Brocato v. Purdy.[1]
The following are the facts in this case:
On August 13, 1970, the Escambia County Grand Jury issued a presentment charging that petitioner had attempted to influence the action of a Grand Juror, Mrs. Jennie F. Rosenbaum. On August 17, 1970, the Circuit Court issued an order for petitioner to appear before said Court on August 20, 1970, and to show cause why he should not be held in contempt, said order being served on Aaron on August 18, 1970. Petitioner filed a motion for a continuance on August 19, 1970, and a continuance to August 26, 1970, was granted. A demand for trial by jury was filed on behalf of petitioner on August 21, 1970, and said motion was denied that same day. On August 24, 1970, motions were filed in behalf of petitioner seeking an order to take the deposition of Mrs. Jennie F. Rosenbaum, for a continuance of the cause, and for a bill of particulars. Each of these motions was denied without hearing on August 25, 1970. On August 26, 1970, a letter requesting the voluntary statement of Mrs. Jennie F. Rosenbaum was filed and on the same day a statement of Mrs. Rosenbaum's refusal to give the voluntary statement to petitioner's attorney was also filed in the Circuit Court for Escambia County, Florida.
On August 26, 1970, petitioner entered a plea of not guilty and was that day tried, convicted and sentenced to four months in the County Jail and fined $250.00 for contempt, said trial conducted before the Judge as the trier of the facts and law, without benefit of jury.
On the foregoing facts, the District Court of Appeal, First District, was presented with the following points of law:
(a) Whether or not the refusal of the trial court to grant defendant's motion for a trial by a jury resulted in the denial of due process of law guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 22 and Article 1, Section 9 of the Florida Constitution.
On this point of law the Court affirmed the judgment of the trial court holding that under the applicable law one must look in retrospect to the actual sentence imposed and by doing so in the present case the offense for which petitioner was found guilty was a "petty" offense as distinguished from a "serious" offense as he was sentenced to less than six months in the County Jail and therefore was not entitled to the benefit of a trial by jury as demanded.
(b) Whether or not the trial court erred in refusing to grant a motion for continuance *675 and thereby greatly prejudiced the defendant by failing to provide sufficient time for the presentation of an adequate defense.
On this point of law the Court affirmed the judgment of the trial court holding that this ground was "without substantial merit."
(c) Whether or not the trial court erred in failing to grant the motion for a bill of particulars filed in behalf of the defendant and thereby greatly prejudiced the preparation of the case for the defense.
On this point of law the Court affirmed the judgment of the trial court holding that said point was "without substantial merit."
(d) Whether or not the trial court erred in refusing to enter an order to allow defendant to take the deposition of Mrs. Jennie Rosenbaum, witness for the state.
On this point of law the Court affirmed the judgment of the trial court holding that said point was "without substantial merit."
Upon careful examination of the record and argument of counsel we are compelled to reverse the decision of the District Court of Appeal for the following reasons.
Historically, criminal contempt, both direct and indirect, has been punishable by fines and imprisonment. Although the trials have been, and still are, handled in a summary fashion, to assure speedy judicial progress without interruption, these proceedings are effectively criminal in nature and persons accused of contempt are as much entitled to the basic constitutional rights as are those accused of violating criminal statutes.[2]
In Bloom v. Illinois,[3] the Supreme Court of the United States held that prosecutions for serious criminal contempts are subject to the jury trial provisions of Article III, § 2, of the Federal Constitution, and of the Sixth Amendment, which is made binding upon the states by virtue of the due process clause of the Fourteenth Amendment.
Duncan v. Louisiana[4] distinguished between serious and petty crimes, in relation to the necessity for trial by jury, and the Supreme Court of the United States specifically held that a crime punishable by two years in prison is a serious crime, thus invoking the right to jury trial. The distinctions between serious and petty crimes were further amplified in Baldwin v. New York,[5] where the Court stated:
"The question in this case is whether the possibility of a one-year sentence is enough in itself to require the opportunity for a jury trial. We hold that it is."[6]
The Court further held that:
"We cannot ... conclude that ... administrative conveniences ... justify denying an accused the important right to trial by jury where the possible penalty exceeds six months' imprisonment."[7]
The Court has, in the past, required a jury trial for contempt, Dade County Classroom Teachers Association, Inc. v. Rubin.[8] However, at the time of that decision, the applicable Florida Rule of Criminal Procedure, 33 F.S.A., in effect also *676 stated such a requirement.[9] Since that decision, the Rule has been amended to permit the judge to hear and determine both the law and the facts.[10] The question before this Court then, is whether the present rule, F.R.C.P. 3.840(a)(4), does, in light of the foregoing federal decisions, pass constitutional muster. We hold that it does not  to the extent that it authorizes a judge to impose a sentence of six months' imprisonment, or greater, without empanelling a jury to try the facts.
The District Court of Appeal, in affirming the conviction, relied upon Bloom and Cheff v. Schnackenberg,[11] for the proposition that, in contempt trials, the result would be viewed retroactively to determine if the right to a jury trial existed at the time of trial. That is, if the defendant was, as in the instant case, the recipient of a sentence of less than six months, he was not entitled to a jury of his peers at the inception of trial. The District Court of Appeal apparently bases its decision on the following language found in Bloom:
"[C]riminal contempt is not a crime of the sort that requires the right to jury trial regardless of the penalty involved... . [W]hen the legislature has not expressed a judgment as to the seriousness of an offense by fixing a maximum penalty which may be imposed, we are to look to the penalty actually imposed as the best evidence of the seriousness of the offense."[12]
We believe, however, that the District Court of Appeal erred in assuming that such a situation exists in this State, as an examination of the following statutes will show.
Section 38.22 of the Florida Statutes, F.S.A., authorizes courts to impose imprisonment and fines for contempt, but states no maximum time for such imprisonment.[13] Section 775.01 of the Florida Statutes, F.S.A., provides that the common law crimes of England are crimes in Florida.[14] Section 775.02 of the Florida Statutes, F.S.A., provides that when no maximum punishment is prescribed for criminal contempt, the maximum shall not exceed one year imprisonment and a fine of $500.00.[15]
Therefore, we must conclude that criminal contempt is a crime under Florida law, with the possible maximum punishment exceeding six months' imprisonment. In light of this conclusion, we hold that F.R.C.P. 3.840(a) (4), authorizing the judge to be the trier of both the law and the facts, is limited in its application to situations in which the judge contemplates, if a finding of guilt be made, the imposition of a sentence of less than six months' imprisonment. A judge's denial of a pre-trial motion for trial by jury will mean that he cannot impose a sentence of six months' *677 imprisonment, or greater, should there be a finding of guilt. If the judge contemplates the imposition of a sentence of six months' imprisonment, or greater, he must empanel a jury to try the facts, unless the defendant has made a waiver thereof. Had a sentence of six months' imprisonment, or greater, been imposed upon the petitioner, the invalidity of the rule beyond the six-month limit would require reversal. However, petitioner's sentence of four months' imprisonment was properly imposed by the judge, as trier of both law and fact, in that the sentence falls within the constitutional limitations upon the operation of the rule we announce today.[16]
In the case before us, petitioner was denied the right to take the deposition of the primary State's witness against him  the woman whom he was charged with attempting to influence as a member of the Grand Jury. Additionally, the Judge denied petitioner's motion for a bill of particulars. The right of persons accused of serious offenses to know, before trial, the specific nature and detail of crimes they are charged with committing is a basic right guaranteed by our Federal and State Constitutions. The foregoing federal cases lead us to conclude that this right is extended to those persons charged with criminal contempt. We, therefore, hold that the trial court's denial of petitioner's motions to take Mrs. Rosenbaum's deposition and for a bill of particulars was error[17]  error which deprived petitioner of his rights to due process and a fair trial.[18]
In this opinion we deal only with indirect criminal contempt. Although persons so charged are entitled to the foregoing constitutional protections, we recognize that the orderly administration of justice requires such proceedings be handled as expeditiously as the circumstances and law may permit.
For the foregoing reasons, the decision of the District Court of Appeal, First District, is quashed and this cause is remanded for further action in the trial court in conformance with this opinion.
It is so ordered.
CARLTON, C.J., and ERVIN and McCAIN, JJ., concur.
ADKINS, J., dissents with opinion.
ROBERTS and DEKLE, JJ., dissent and concur with ADKINS, J.
ADKINS, Justice (dissenting).
Respectfully, I must dissent. In my view, Rule 3.840(a)(4), CrPR, when read in light of controlling decisions of the Supreme Court of the United States, is constitutional and has plainly been applied to the facts of this case in a constitutional manner. I would approve the decision of the District Court of Appeal.
The leading case on the requirement of jury trials in contempt proceedings remains the original pronouncement of the Supreme Court of the United States imposing such a requirement, Cheff v. Schackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), a requirement that was suggested by United States v. Barnett, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964), and imposed *678 on the states through Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).
In Cheff v. Schackenberg, supra, the Supreme Court upheld the nonjury contempt conviction of Cheff which resulted in a six-month prison sentence. In so doing, the Court held:
"We conclude therefore that Cheff was properly convicted without a jury. At the same time, we recognize that by limiting our opinion to those cases where a sentence not exceeding six months is imposed we leave the federal courts at sea in instances involving greater sentences. Effective administration compels us to express a view on that point. Therefore, in the exercise of the Court's supervisory power and under the peculiar power of the federal courts to revise sentences in contempt cases, we rule further that sentences exceeding six months for criminal contempt may not be imposed by federal courts absent a jury trial or waiver thereof. Nothing we have said, however, restricts the power of a reviewing court, in appropriate circumstances, to revise sentences in contempt cases tried with or without juries." 384 U.S. 373, p. 380, 86 S.Ct. 1523, p. 1526.
In Bloom v. Illinois, supra, the rule established in Cheff v. Schackenberg, supra, was merely applied to the states, particularly to Illinois.
Justice Boyd points to a peculiarity of Illinois law which provided the Supreme Court in Bloom with further support for its position of not requiring a jury trial where the sentence handed down is six months or less:
"Under the rule in Cheff, when the legislature has not expressed a judgment as to the seriousness of an offense by fixing a maximum penalty which may be imposed, we are to look to the penalty actually imposed as the best evidence of the seriousness of the offense." 391 U.S. 194, p. 211, 88 S.Ct. 1477, p. 1487.
Under Illinois law, there is a statute which provides a maximum sentence of one year and $1,000 fine for crimes where a penalty is not provided (Ill. Rev. Stat., 1961, Ch. 38, § 1-7(j)), but contempt has been held not to come under the section because a separate section limits applicability to offenses included within the Code of Illinois. People v. Stollar, 31 Ill.2d 154, 201 N.E.2d 97 (1964), and Ill. Rev. Stat., 1961, Ch. 38, § 1-3.
The comparable Florida statute, Fla. Stat. § 775.02, F.S.A., provides a similar limitation of one year and a fine of $500, but limits its applications, solely to common law crimes. Whether indirect contempt of court, as is involved in the case sub judice through Rule 3.840, CrPR, is included in the maximum penalty statute, or is distinguishable from the class of cases included is an issue which this Court has not had to face, and which I feel is not required in the determination of the case sub judice.
If the language noted above from Bloom, supra, were the only test provided by the Supreme Court, the question of whether or not Fla. Stat. § 775.02, F.S.A., applies to indirect criminal contempt might be essential, but such is not the case. There is no language in Bloom to indicate that the Supreme Court intended to limit the rule of Cheff, in which the penalty actually imposed was the measure of the need for a jury trial. In fact, the Supreme Court, in Bloom, stated:
"We accept the judgment of Barnett and Cheff that criminal contempt is a petty offense unless the punishment makes it a serious one; ... ." 391 U.S. 194, p. 198, 88 S.Ct. 1477, p. 1480.
The view that Fla. Stat. § 775.02, F.S.A., applies and that therefore Rule 3.840(a) (4), CrPR, is unconstitutional unless saved by the imposition of six months or less is one which I cannot espouse.
There is nothing in any of the opinions cited to indicate that the Supreme Court intended to limit application of the nonjury *679 trial rationale to cases where a quirk of statutory language allows for unlimited sentences for contempt of court. Such a result would be to endorse a tool for expanding the proliferation of long contempt sentences which the Court was seeking to curtail.
Thus, I would hold that the application of Rule 3.840(a)(4), CrPR, in the case sub judice was completely in line with the applicable case law handed down by the United States Supreme Court, and totally immune from constitutional attack.
Since the Constitution of the United States is the supreme law of the land (U.S.Const., art. VI), it has been recognized by this Court that we and the other courts of the State are bound by applicable decisions of the Supreme Court. State ex rel. Hawkins v. Board of Control, 83 So.2d 20 (Fla. 1955). Therefore, a reasonable interpretation of Rule 3.840(a) (4), CrPR, of necessity includes the requirements of Cheff and Bloom. Read in this light, I find that the rule is constitutional and that any attempt to impose a contempt sentence in excess of six months would violate the intent of the rule, as properly construed, and such sentence would be subject to review and reduction by this Court.
I am unable to agree that Rule 3.840(a) (4), CrPR, as properly applied, is subject to any constitutional criticism, as it complies completely with the letter and intent of the applicable Federal constitutional provisions as determined by the United States Supreme Court. And, in the case sub judice, application was proper.
Likewise, I am unable to agree that the denial of the demand for a bill of particulars or of the demand for the right to take a deposition of a State witness constituted error in a proceeding for indirect criminal contempt.
Accordingly, I would discharge the writ of certiorari and approve the decision of the District Court of Appeal, First District.
ROBERTS and DEKLE, JJ., concur.
NOTES
[1] 251 So.2d 309 (Fla.App. 3rd 1971), wherein the Court stated at footnote 1: "The requirement for a hearing and an opportunity to resist the charge [indirect criminal contempt] includes the right to reasonable notice and a reasonable opportunity to present a defense."
[2] Cf. State ex rel. Argersinger v. Hamlin, 236 So.2d 442, 445 (Fla. 1970), rev'd 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972): "From the inside all jails look alike." (Boyd, J., dissenting).
[3] 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).
[4] 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).
[5] 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970).
[6] Id. at 69, 90 S.Ct. at 1888 (Emphasis supplied.)
[7] Id. at 73-74, 90 S.Ct. at 1890-1891. (Emphasis supplied.)
[8] 217 So.2d 293 (Fla. 1968).
[9] F.R.C.P. 1.840(a) (4) provided at that time: "All issues of law shall be heard and determined by the judge; all issues of fact shall be heard and determined by a jury of six persons selected as in criminal cases... ."
[10] F.R.C.P. 3.840(a) (4) provides: "All issues of law and fact shall be heard and determined by the judge."
[11] 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966).
[12] 391 U.S. at 211, 88 S.Ct. at 1487.
[13] "Every court may punish contempts against it whether such contempts be direct, indirect, or constructive... ." The statute further empowers the judge to hear and determine all questions of law and fact. It would appear that the same constitutional infirmities that are present within F.R.C.P. 3.840(a) (4) also infect this portion of the statute.
[14] "The common law of England in relation to crimes, except so far as the same relates to the modes and degrees of punishment, shall be of full force in this state where there is no existing provision by statute on the subject."
[15] "When there exists no such provision by statute, the court shall proceed to punish such offense by fine or imprisonment but the fine shall not exceed five hundred dollars, nor the imprisonment twelve months."
[16] In so holding, we deal only with the provisions of F.R.C.P. 3.840(a) (4), provisions which concern indirect criminal contempt. Under the facts of this case we have no occasion to consider the Rule concerning direct criminal contempt, F.R.C.P. 3.830.
[17] See State v. Gillespie, 227 So.2d 550 (Fla.App.2d 1969). See also F.R.C.P. 3.140(n); F.R.C.P. 3.220(f); F.R.C.P. 3.840(a) (2).
[18] "The adversary system is still the core of our Anglo-American concept of the truth-finding process; and constitutional concern demands ... that such process be fair... . [T]he underlying principle supporting the whole idea of criminal pre-trial discovery ... is fairness." Id. at 553.